UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALFREDO DANIEL MONTANEZ,

                Plaintiff,

v.                                         Case No. 18-cv-692-pp

MERCY MAHAGA, DOCTOR HORTON, and
ARMOR CORRECTIONAL HEALTH SERVICES INC.,

                Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 15)**

This case is assigned to Magistrate Judge Nancy Joseph. With her permission, the plaintiff filed a second amended complaint on November 2, 2018, alleging that the defendants violated his constitutional rights. Dkt. No. 15. Although the plaintiff consented to Judge Joseph hearing and deciding the case, the defendants have not had the opportunity to decide whether to consent because, until now, the court has not decided whether the plaintiff has stated claims against the defendants. Because both parties have not yet consented to the magistrate judge deciding the case, the clerk's office has referred it to this court to screen the second amended complaint and decide whether that complaint should be served on any of the defendants. The court will explain which claims the plaintiff has stated against which defendants, and then will return the case to Judge Joseph for further proceedings.

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. The PLRA requires the

1

court to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## A. The Plaintiff's Allegations

The amended complaint alleges that in early November 2017, shortly after arriving at the Milwaukee County Jail, defendant nurse Mercy Mahaga performed an intake examination of the plaintiff. Dkt. No. 15 at 2. The plaintiff explains that he had a pre-existing back injury (two herniated discs), which caused him a significant amount of pain. Id. at 2, 4.

The plaintiff asserts that Mahaga was looking at his medical records on the computer when he arrived at the examination. Id. at 2. He allegedly told her that he was in excruciating pain and requested medication and walking assistance, such as a cane and or a walker; he suggested that his family could bring his prescribed medication and walker to the jail. Id. at 2-3. According to the plaintiff, Mahaga initially refused and told him to buy ibuprofen at the commissary. Id. at 2. The plaintiff states that he told her that would not help him. Id.

The plaintiff states that after he continued to beg for pain medication (explaining that he was in intense pain and had not had any pain medication since arriving at the facility a week earlier), she finally agreed to prescribe ibuprofen for two weeks. Id. at 3. The plaintiff says he told her this was not sufficient—he had been in a car accident before being arrested, and because he had run from the police, he had never been seen by medical personnel. Id. Mahaga allegedly refused to do prescribe anything else, telling the plaintiff, "if [he] was able to stand on both of [his] feet and get away from the cops, [he] could stand on both of [his] feet and fend for [himself]." Id.

3

The plaintiff states that he left Mahaga's office and asked an officer (who is not a defendant) if he could speak to a supervisor. Id. Mahaga allegedly "rapidly appeared" and told him he could not speak to a supervisor and he should be returned to his housing unit. Id. The plaintiff states that once he got back to the housing unit, he told another officer (who is not a defendant) about what happened. Id. That officer allegedly told the plaintiff he would call the clinic so the plaintiff could be examined by someone else, and he instructed the plaintiff to file a grievance, which the plaintiff did. Id. The plaintiff asserts that yet another officer (who is not a defendant) reviewed the grievance and forwarded it to defendant Dr. Horton, a medical supervisor who works for defendant Armor Correctional Health Services (also referred to as Armor Medical). Id.

The plaintiff explains that he tried to live with the pain, but he began to have difficulty urinating; it took longer than usual, there were "abnormal" pauses and it was very painful. Id. at 3. The plaintiff asserts that he informed nurse Gray (who is not a defendant), who, after checking his records, told him he was taking an extremely high dosage of ibuprofen, which essentially was causing his kidneys to shut down. Id. According to the plaintiff, Gray called Mahaga and asked her why she had prescribed 1,200mg of ibuprofen twice a day, which was too high a dosage. Id. The plaintiff states "in haste [he] was removed from receiving medication." Id.

The plaintiff asserts that he complained about his pain to staff and nurses, but they informed him that the order had been discontinued and that

4

Mahaga would not renew it. Id. at 4. The plaintiff explains that, as a result of Mahaga's refusal to address his complaints of pain, he experienced loss of mobility, he couldn't sleep, his muscles were sore, he had muscle spasms and he had burning sensations from his lower back down to the bottom of his foot. Id. He alleges that he "felt pain, discomfort[,] depression and stress," and that it felt like torture. Id. at 4-5.

At the end of December 2017 and beginning of January 2018, the plaintiff submitted grievances and complaints, but states he received no responses. Id. at 5. The plaintiff states that on January 8, 2018, he was in so much pain that he requested a medical emergency, which was denied by officer Pagan (who is not a defendant). Id. at 5. The plaintiff allegedly told Pagan he would jump off the top tier if that's what it would take to get some medical attention. Id. Pagan contacted a lieutenant and the psychologist; an appointment was scheduled the next day with nurse practitioner Charles Dombeck (who is not a defendant). Id.

According to the plaintiff, Dombeck prescribed Tylenol and ibuprofen, assigned him a walker, ordered that he be given HOC shoes and the orthopedic insoles from his personal property, and scheduled him to see an outside provider so he could get different medication prescribed. Id.

About a month later, Dombeck's medication prescription expired, so nurse Turner (who is not a defendant) tried to get Mahaga to renew the prescription. Id. at 6. According to the plaintiff, Turner told him that Mahaga refused, saying, "I'm not giving that man anything." Id. The plaintiff states that

he filed a grievance, and that when Dombeck returned to work days later, Dombeck reordered the medication. Id.

The plaintiff explains that he was eventually examined by an outside provider and an MRI was done. Id. He was then scheduled to see a neurologist to conduct an electronic examination of his nerve. Id. The plaintiff states that he received a prescription for a muscle relaxer, was ordered to consult with an orthopedic surgeon and received physical therapy. Id.

**B.   The Court's Analysis**

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of prisoners." Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997) (internal quotations and citations omitted). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id.

The court will allow the plaintiff to proceed on a deliberate indifference claim against Mahaga based his allegations that she ignored or minimized his requests for pain relief and a walker/cane, prescribed a dangerous amount of ibuprofen, and refused to renew Dombeck's prescription after it expired.

The court will not allow the plaintiff to proceed on his claim against Dr. Horton. He alleges only that his grievance about Mahaga was forwarded to Dr. Horton, and that Dr. Horton was a supervisor for Armor. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus,

liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (quoting Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994)).

> [S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable . . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001) (quoting Jones v. City of Chi., 856 F.2d 985, 992-93 (7th Cir. 1988)).

The plaintiff has not stated sufficient facts to support a claim that Horton knew about Mahaga's conduct, or approved it, facilitated it, condoned it or turned a blind eye to it. He has not alleged knowing or deliberate indifference.

Nor will the court allow the plaintiff to proceed on a claim against Armor Correctional Health Services. It appears that the only reason the plaintiff named Armor as a defendant is because it is the employer of Mahaga and Horton. This is not enough. Under §1983, a plaintiff cannot hold one person liable for the misconduct of another, and cannot sue a private corporate employer who contracted to provide critical government services for the misconduct of its employees unless the plaintiff can show "that his injury was caused by a [corporate] policy, custom, or practice of deliberate indifference to serious medical needs, or a series of bad acts that together raise the inference of such a policy." Shields v. Ill. Dept. of Corrections, 746 F.3d 782, 796 (7th Cir. 2014). The plaintiff has not alleged that Armor had such a policy, custom

or practice, nor has he alleged a pattern of bad acts raising the inference of such a policy.

**C.    Conclusion**

The court **DISMISSES** Dr. Horton and Armor Correctional Health Services as defendants.

The court **ORDERS** the United States Marshal to serve a copy of the second amended complaint, dkt. no. 15, and this order on defendant Mercy Mahaga under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Mercy Mahaga to file a responsive pleading to the second amended complaint.

The court further **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery

and dispositive motions.

The court **RETURNS** this case to Magistrate Judge Joseph for further proceedings.

Dated in Milwaukee, Wisconsin, this 6th day of December, 2018.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**