UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALFREDO DANIEL MONTANEZ,

        Plaintiff,

   v.

Case No. 18-cv-692-pp

MERCY MAHAGA,

        Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 39) AND DISMISSING CASE**

    Plaintiff Alfredo Daniel Montanez is an inmate at the Milwaukee County Jail and is representing himself. He filed this lawsuit under 42 U.S.C. §1983, alleging that defendant Mercy Mahaga violated his constitutional rights. Dkt. No. 15. On December 6, 2018, the court screened the plaintiff's second amended complaint and allowed him to proceed on a deliberate-indifference claim against the defendant based his allegations that she 1) "ignored or minimized his requests for pain relief and a walker/cane;" 2) "prescribed a dangerous amount of ibuprofen;" and 3) "refused to renew [another provider's] prescription [for pain medication] after it expired." Dkt. No. 17 at 6. On September 23, 2019, the defendant filed a motion for summary judgment.[1]

---

[1] The plaintiff filed a sur-reply in response to the defendant's reply brief. Dkt. No. 50. The Federal Rules of Civil Procedure and this court's Civil Local Rules do not allow parties to file sur-replies without the court's permission. See Civ. L. R. 56; Fed. R. Civ. P. 56. Because the plaintiff did not ask the court for

1

## I.  RELEVANT FACTS

On November 2, 2017, the plaintiff was arrested and booked into the Milwaukee County Jail. Dkt. No. 44 at ¶8. A week later, on November 9, he was examined by the defendant, who worked at the jail as a licensed Advanced Practice Nurse Prescriber. Id. at ¶1; Dkt. No. 41 at ¶2. According to the defendant, the plaintiff reported that he had a history of chronic back pain and was using opiates while in the community. Dkt. No. 41 at ¶3; Dkt. No. 44 at ¶9. The plaintiff told the defendant that he was obtaining medication, including Valium, Percocet and OxyContin, without prescription; he also had been using benzodiazepines and cocaine. Dkt. No. 44 at ¶¶41, 42; Dkt. No. 41 at ¶3. Although the defendant noted that the plaintiff limped when he walked and was dragging his right foot, she observed him to be alert and oriented and in no apparent distress. Dkt. No. 41 at ¶3.

The plaintiff asserts that when he entered the defendant's office for an intake examination, she was looking at his medical records on her computer. Dkt. No. 15 at 2.[2] He told the defendant that he was in excruciating pain and

---

permission to file a sur-reply, the court did not consider that filing when making its decision.

[2] Under Civil L. R. 56(b)(2)(B)(i) a party must respond to each of the opposing party's proposed facts, specifically referencing affidavits, declarations, parts of the record and other supporting materials that support any disagreement. The plaintiff did not comply with this rule; he did not file a declaration in support of his disagreements with the defendant's proposed facts. The plaintiff did, however, declare under penalty of perjury that the statements in his second amended complaint were true and correct. Dkt. No. 15 at 8. To the extent that those statements comply with Fed. R. Civ. P. 56(c)(4), the court will consider them as evidence in support of the plaintiff's opposition to the defendant's motion. See Ford v. Wilson, 90 F.3d 245. 246-47 (7th Cir. 1996).

that he couldn't walk or sleep without difficulty and discomfort. Id. at 3. According to the plaintiff, he asked if his family could bring in his medication, but the defendant refused his request. Id.

The defendant explains that the jail had received the plaintiff's medication history from the Sixteenth Street Community Health Center, where the plaintiff was being treated when he was out in the community. Dkt. No. 44 at ¶7. The plaintiff had last been examined there on June 22, 2017 by Rachel Vogelgesang for complaints of back pain. Id. at ¶5. Vogelgesang had prescribed ibuprofen for pain and tizanidine (a muscle relaxer) for seven days, no refills. Id. at ¶6. According to the defendant, the plaintiff's medication history also showed that as of June 2017, the plaintiff had prescriptions for triamcinolone (a steroid) and omeprazole (proton pump inhibitor for GERD). Id. at ¶7. All other pain medications had been discontinued years earlier. Id.; Dkt. No. 41 at ¶11.

The defendant explains that per jail guidelines, she could not prescribe opiates or muscle relaxants for the plaintiff's complaints of pain because he did not have a medical order indicating that he had a permanent disability with chronic pain. Dkt. No. 44 at ¶¶29, 30. The defendant prescribed the plaintiff ibuprofen for his pain at a daily dosage of 2,400 mg (two 600 mg tablets, twice per day). Id. at ¶12. The recommended maximum daily dosage of ibuprofen, for an adult, is 3,200 mg. Id. at ¶13. The daily dosage the defendant prescribed was the same as the daily dosage that Vogelgesang had prescribed. Id. at ¶5, 16. The plaintiff points out, however, that while the daily dosage was the same,

3

Vogelgesang had prescribed four doses of 600 mg daily, while the defendant prescribed two doses of 1,200 mg daily. Dkt. No. 48 at ¶16.

Despite observing the plaintiff limping, the defendant did not give the plaintiff a cane as a walking aid. Dkt. No. 44 at ¶11. She explains that medical staff do not give walking aids to inmates unless there is a physician's order confirming a medical disability because walking aids can be used as weapons in the jail. Id. at ¶31. The plaintiff did not have an order of medical disability when she examined him, so the standard of practice did not allow her to give him a walking aid. Id. at ¶32.

The plaintiff did not see or speak to the defendant after November 9, 2017. Dkt No. 44 at ¶45. According to the plaintiff, he began to develop complications while urinating; it was taking longer than usual with abnormal pauses and pain. Dkt. No. 15 at 4. The plaintiff never was tested for kidney problems, dkt. no. 44 at ¶55, but he states that, at some unspecified point, another nurse told him to stop taking so much ibuprofen because it was damaging his kidneys, dkt. no. 15 at 4.

On January 9, 2018, Charles Dombeck, a licensed Advanced Practice Nurse Prescriber (who is not a defendant), examined the plaintiff. Dkt. No. 44 at ¶22. He prescribed acetaminophen and ibuprofen. Id. at ¶26. He also noted that the plaintiff had obtained a walker from another inmate—he did not have a medical order for it. Id. at ¶¶34, 52. Because the correctional officers had not confiscated the walker, Dombeck decided the plaintiff could keep it for an additional fourteen days. Id. at ¶35.

4

The plaintiff asserts that his prescription for acetaminophen and ibuprofen ran out on February 7, 2018. Dkt. No. 15 at 6. The plaintiff alleges that a nurse (who is not a defendant) told him that the defendant refused to refill the prescription. Id. The defendant responds that nothing in the plaintiff's medical records indicates that she was contacted in February 2018 about renewing the plaintiff's prescription for acetaminophen and ibuprofen. Dkt. No. 41 at ¶18. She further explains that, even if she had been contacted about renewing the prescription, the standard of practice would have required her to complete a clinical evaluation before determining whether it was appropriate to renew the prescription. Id. at ¶19. The defendant clarifies that, after November 9, 2017, no one ever asked her to evaluate the plaintiff. Id. at ¶20.

**II.   DISCUSSION**

   A.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Analysis

The court allowed the plaintiff to proceed on a claim that the defendant was deliberately indifferent to his serious medical need in violation of the Eighth Amendment because she ignored or minimized his requests for pain relief and a walker or cane, because she prescribed him a dangerous amount of ibuprofen and because she refused to renew the acetaminophen and ibuprofen prescriptions after they expired. Dkt. No. 17 at 6.

The defendant examined the plaintiff one week after he was arrested. Because the plaintiff was a pretrial detainee, his claim arises under the Fourteenth Amendment. The Seventh Circuit applies a two-part test when assessing a pretrial detainee's Fourteenth Amendment challenge to the medical care he received. Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019). To

survive summary judgment, the plaintiff "must demonstrate that genuine issues of material fact exist on two questions: (1) whether he suffered from an objectively serious medical condition and (2) whether the medical staff's response to it was objectively unreasonable." Id. at 942-43 (citations omitted). Because there is no dispute that the plaintiff's chronic back pain qualifies as an objectively serious medical condition, the court will focus its analysis on the second question. In assessing the reasonableness of the defendant's response, the court considers the totality of the facts and circumstances. Id. at 942. "Negligence or gross negligence does not meet this standard." Id. Nor does a plaintiff's disagreement with the provider's course of treatment mean that the course of treatment was objectively unreasonable. Id. at 944.

The court allowed the plaintiff to proceed on claims based on his allegations that the defendant 1) refused to provide him with adequate pain relief and refused to give him a cane; 2) prescribed a dangerous amount of ibuprofen; and 3) refused to renew his prescription for acetaminophen and ibuprofen. To survive summary judgment, the plaintiff must present evidence from which a reasonable jury could conclude that, considering the totality of the circumstances, those three decisions were objectively unreasonable.

### 1. Pain Medication and Cane

The parties agree that the defendant reviewed the plaintiff's pain medication records before deciding what pain medication to prescribe. The defendant explains she had noted that the plaintiff's most recent provider had prescribed 2,400 mg of ibuprofen daily. She also noted that all prescriptions for

7

other pain medications had expired years earlier. Although the plaintiff told the defendant that he was taking other medications to address his pain, he admitted that he did not have prescriptions for those medications. The defendant explains that she decided to continue with the medication that the plaintiff's community provider had recommended: 2,400 mg of ibuprofen daily.

The defendant didn't ignore the plaintiff's pain or refuse to give him pain medication. She refused to give him the pain medication he wanted. There is no evidence in the record from which a jury could reasonably conclude that the defendant's decision to give the plaintiff the same dose of ibuprofen that his community provider had recommended was objectively unreasonable, or that her decision not to prescribe him stronger medication for which he did not have a current prescription was unreasonable. The plaintiff disagrees with the defendant's decision to give him ibuprofen rather than something stronger, but that disagreement does not support a conclusion that the defendant's decision was objectively unreasonable.

The defendant explains that she did not give the plaintiff a cane as a walking aid because no physician had found that the plaintiff was medically disabled and required a walking aid. She explains that canes can be used as weapons, which is why an order confirming disability is required before jail staff will give a cane to an inmate. The plaintiff does not dispute that no physician had entered an order of disability. He asserts only that the defendant saw him limping and dragging his foot. Many people who limp are able to walk

8

without a walking aid, and the defendant has presented no evidence that he was unable to walk under his own power without assistance.

The plaintiff points to the fact that Dombeck ordered that he be allowed to use a walker, but Dombeck did so only because the plaintiff had managed to get a walker from another inmate. Dombeck confirms that he did *not* prescribe the walker under a medical order of disability. Dkt. No. 43 at ¶10. He allowed the plaintiff to have the walker only for an additional two weeks, suggesting that he did not believe the plaintiff had a permanent disability requiring long-term use of a walking aid. Considering the totality of the circumstances, no jury could reasonably conclude that the defendant's refusal to provide the plaintiff with a cane was objectively unreasonable.

### 2. 1,200 mg of Ibuprofen, Two Times per Day

The defendant explains that she prescribed the plaintiff the same daily ibuprofen dosage that his community provider had recommended—2,400 mg. Rather than prescribing 600 mg four times per day as the plaintiff's community provider had recommended, however, she prescribed 1,200 mg (two tablets of 600 mg) two times per day. Dkt. No. 41 at ¶¶8, 4. Based on her professional education and experience as an Advanced Practice Nurse Prescriber, the defendant explains that the recommended daily dose of ibuprofen for an adult is 3,200 mg, which is 800 mg more than what she prescribed the plaintiff. Id. at ¶¶2, 4. She also asserts that the amount she prescribed—2,400 mg per day—does not cause kidney failure and that that dose is routinely prescribed to treat pain complaints. Id. at ¶4. Dombeck, who also is an Advanced Practice

9

Nurse Prescriber, confirmed that a daily dose of 2,400 mg is typical for short-term treatment of pain symptoms and that there is no medical evidence supporting a conclusion that that dosage, taken daily, negatively impacts the kidneys. Dkt. No. 43 at ¶2, 8.

The plaintiff has provided no admissible evidence to rebut the defendant's evidence. In his second amended complaint, the plaintiff alleged that another nurse told him he was taking too much ibuprofen and that his kidneys were shutting down. Dkt. No. 15 at 4. The plaintiff did not identify this other nurse and provided no affidavit from the other nurse (or anyone else) supporting this statement. The plaintiff cannot use accounts of what other people said as evidence to support his argument. That's hearsay, and the court may not consider inadmissible hearsay when deciding whether a dispute of material fact exists. See Carlisle v. Deere & Co., 576 F.3d 649, 655-56 (7th Cir. 2009); Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) (explaining that "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" (citing Fed. R. Evid. 801(c))).

The plaintiff submitted two pages from an unknown source that contain general information about ibuprofen. Dkt. No. 47-1 at 9-10. He claims that this document rebuts the defendant's assertion that prescribing 1,200 mg of ibuprofen two times per day is not objectively unreasonable. The court is mystified by this claim. The document states, "The maximum amount of ibuprofen for adults is 800 milligrams per dose or 3200 mg per day (4

10

maximum doses)." Id. at 9. The defendant prescribed the plaintiff *less* than the 3,200 mg per day referenced in this document. It appears that the plaintiff believes that because this document references four doses of a maximum of 800 milligrams per dose, and the defendant prescribed him two doses of 1,200 milligrams per dose, the defendant's prescription somehow violated the dosage described in the document. The court does not see how it would matter whether the plaintiff received three 800-milligram pills or two 1,200 milligram pills—as long as his total dosage did not exceed the recommended dose of 3,200, which it did not, there is no basis for a reasonable jury to conclude that the defendant's prescription was unreasonable.

Even if the document did rebut the defendant's assertions, the statements in it are inadmissible hearsay, so the court cannot rely on them in assessing the defendant's motion for summary judgment. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996) ("The evidence relied upon must be competent evidence of a type otherwise admissible at trial."). The court has no idea who made these statements or in what context these statements were made, making this evidence unreliable and inadmissible for purposes of summary judgment.

Further, as the defendant points out, it appears that this information may have been updated on December 22, 2018. Dkt. No. 47-1 at 9. That is more than a year *after* the defendant prescribed ibuprofen for the plaintiff, making the statements irrelevant in terms of deciding whether the defendant's decision was objectively reasonable at the time she made it.

11

The plaintiff has presented only his opinion that he should not have taken 1,200 mg of ibuprofen in a single dose and that doing so harmed his kidneys. But the plaintiff concedes that he has no knowledge as to what the maximum recommended dosage of ibuprofen is, he has no health care training or expertise and he never was tested for kidney problems. Dkt. No. 44 at ¶¶54-56. The plaintiff is speculating that the dosage the defendant prescribed was objectively unreasonable, but "mere speculation or conjecture will not defeat a summary judgment motion." McCoy v. Harrison, 341 F.3d 600, 604 (7th Cir. 2003). No reasonable jury could conclude that the defendant's decision to prescribe two daily doses of 1,200 mg of ibuprofen was objectively unreasonable.

### 3. Refusal to Renew the Plaintiff's Prescription

The defendant did not indicate whether she remembered if someone asked her to renew the plaintiff's expired prescription. Perhaps she does not; given the many health requests inmates must make at the jail, a single, limited request made more than a year ago likely would be difficult to recall. The defendant does, however, point out that there is no indication in the plaintiff's medical records that anyone asked her to renew the expired prescription. She also explains that, even if someone had asked her to renew the prescription, the standard of practice would have required that she first examine the plaintiff to determine if it was appropriate to renew the prescription because it had been months since she last examined him. Dkt. No. 41 at ¶19. The defendant

12

clarifies that no one asked her to examine the plaintiff after November 9, 2017. Id. at ¶20.

The plaintiff has presented no admissible evidence from which a jury could reasonably conclude that the defendant's refusal to renew his expired prescription (assuming that she did refuse to do so) was objectively unreasonable. In his amended complaint he stated that another nurse (who is not a defendant) told the plaintiff that the defendant refused to refill the order and said, "I'm not giving that man anything." Dkt. No. 15 at 6. As explained earlier, what the plaintiff says this nurse told him is hearsay, so it is inadmissible for purposes of summary judgment.

The plaintiff has presented no evidence from which a jury could reasonably conclude that the defendant's decision not to renew the plaintiff's prescription without first examining him was objectively unreasonable. The court will grant summary judgment in favor of the defendant.

### III. CONCLUSION

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 39. The court **DISMISSES** this case and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or

excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**